UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES ROGER BROOKS,

        Petitioner,        Case No. 2:21-CV-10993

    v.        Honorable George Caram Steeh

BRYAN MORRISON,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Charles Roger Brooks, ("Petitioner"), incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* habeas corpus petition challenging his state conviction for armed robbery, Mich. Comp. Laws § 750.529, two counts of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, carrying a weapon with unlawful intent, Mich. Comp. Laws § 750.226, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony (felony firearm)(second offense), Mich. Comp.

- 1 -

Laws § 750.227b.  For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I.  Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from his involvement in a foiled robbery of a pizza delivery person, on Kentucky Street in Detroit on December 9, 2015. When the delivery person arrived to deliver an order, a man on the front porch, identified as codefendant Devante Fleming, waved his hand and signaled to her. As she approached the porch, defendant emerged from the side of the house. Defendant was armed with a gun that was equipped with a laser pointer, and he aimed it at her. The pizza store manager had accompanied the delivery person on the run and was waiting in a car parked along the street. The manager had a concealed pistol license, produced a gun and instructed defendant to drop his weapon. When defendant pointed his weapon toward the manager, the manager fired his gun toward defendant. The defendant responded by firing back. Both defendant and the pizza delivery person were wounded during the exchange of gunfire. The pizza delivery person received her wound in a buttock. The manager claimed that a jacket he was wearing also sustained gunshot damage, but he was able to call 911 and drove the delivery person to a hospital. The police then located defendant on the ground near a pool of blood approximately a block away from the shooting.

Shell casings recovered from the scene indicated that two different guns were involved in the shooting, one of which was positively identified as the manager's gun. The prosecution also introduced evidence that defendant had made telephone calls from the same telephone number that was used to place the pizza order, and that defendant was associated with an address where the codefendant resided.

Defendant and codefendant were tried jointly, before one jury. Against the advice of counsel, defendant testified at trial and denied ordering a pizza, knowing codefendant Fleming, or possessing a gun. He claimed that he was selling marijuana from the house on Kentucky Street and thought the delivery person was a customer. He said that he only had a flashlight, which he pointed toward her, and then at the manager, after which he heard gunfire coming from the manager's car. The jury convicted defendant as charged, but acquitted Fleming of all charges.

*People v. Brooks*, No. 338267, 2019 WL 573049, at *1 (Mich. Ct. App. Feb. 12, 2019).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 503 Mich. 1038, 927 N.W.2d 251 (2019).

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Brooks,* No. 16-002674-01-FC (Wayne County Circuit Court, Sept. 30, 2019). The Michigan appellate courts denied petitioner leave to appeal. *People v. Brooks,* No. 351163 (Mich. Ct. App. Feb. 10, 2020); *lv. den.* 507 Mich. 898, 956 N.W.2d 181 (2021).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Petitioner Brooks was denied his constitutional right to a jury trial where his own attorney curtailed his use of peremptory and possibly for cause juror challenges.

II. Defense attorney, Ms. Wanda Cal, failed to provide constitutionally effective assistance of counsel under the Sixth Amendment.

III.  Petitioner is entitled to habeas relief where the state trial court erred by abusing its discretion when it reinstated the armed robbery charge violating the right to a fair trial.

IV. Petitioner is entitled to habeas relief where the trial court commit reversible error when it denied Petitioner's motion for a directed verdict of acquittal where the prosecution failed to prove beyond a reasonable doubt, the essential elements of armed robbery.

V. The prosecutor committed prejudicial misconduct when she failed to correct misleading and false testimony requiring a new trial.

VI. Petitioner is entitled to habeas relief where he was denied his right to the effective assistance of appellate counsel who neglected to raise issues three, four and five on direct appeal.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of
the claim–

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in
> > light of the evidence presented in the State
> > court proceeding.

A decision of a state court is "contrary to" clearly established federal
law if the state court arrives at a conclusion opposite to that reached by the
Supreme Court on a question of law or if the state court decides a case
differently than the Supreme Court has on a set of materially
indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
An "unreasonable application" occurs when "a state court decision
unreasonably applies the law of [the Supreme Court] to the facts of a
prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ
simply because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law
erroneously or incorrectly." *Id.* at 410-11.

Petitioner's first claim was reviewed and rejected under a plain error
standard because petitioner failed to preserve the issue at the trial court
level.  The AEDPA deference applies to any underlying plain-error analysis

- 5 -

of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638(6th Cir. 2017).[1]

### III. Discussion

### A. Claim # 1.  The *Batson*/peremptory challenges claim.

Petitioner first claims that his right to a fair trial and to exercise his peremptory challenges was violated when the judge refused to permit him to exercise peremptory challenges of certain jurors after defense counsel informed the judge, outside the jury's presence, that petitioner, who was assisting defense counsel with jury selection, was attempting to remove all of the white jurors from the jury.  The Michigan Court of Appeals discussed and rejected the claim as follows:

> During a break, the trial court apparently observed that defense counsel and defendant were engaged in an argument. Defense counsel told the court, outside the presence of the jury, that defendant had become combative with her because she told him that he could not peremptorily dismiss jurors simply because of their race. At that point, defendant had already peremptorily dismissed five jurors, all of whom were white. He then wanted to peremptorily dismiss jurors 11 and 13, both of whom were also white, but he did not have a race-neutral reason for doing so. The court explained to defendant that a

---

[1] Respondent argues that the claim is procedurally defaulted. Petitioner argues in his second claim that counsel was ineffective during voir dire.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

party could not excuse jurors because of their race, and encouraged defendant to work with defense counsel in choosing which jurors to challenge. Thereafter, defendant denied that he wanted to excuse the jurors because of their race, but when asked by the court, he said he could not remember why he wanted to peremptorily dismiss jurors 11 and 13. The court denied the peremptory challenges to dismiss jurors 11 and 13 and informed defendant that he could not dismiss the jurors without providing a race-neutral reason for wanting to excuse them. After further voir dire of newly seated jurors, all of the parties passed for cause and passed on additional peremptory challenges. According to defense counsel, defendant said that he was "fine" with the jury as seated.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

As the trial court observed, defendant had engaged in a pattern of using peremptory challenges to dismiss only white jurors, having exercised all five of his previous peremptory challenges to dismiss white jurors. The trial court did not clearly err by finding that this pattern of using peremptory challenges to excuse only white jurors established a prima facie case of discrimination. Therefore, the trial court properly called on defendant to provide race-neutral explanations for wanting to dismiss jurors 11 and 13, who were also white. Although defendant denied that he wanted to excuse jurors 11 and 13 because they were white and claimed that he wanted to dismiss them because of something they said, he was unable to recall what it was that they said that made him want to excuse them. Because defendant was unable to provide a race-neutral explanation, the trial court's denial of the peremptory challenges was proper.

Defendant's argument that the trial court improperly prohibited him from exercising any of his remaining peremptory challenges is not supported by the record. The trial court did not inform defendant that he was precluded from exercising *any* more peremptory challenges. It merely informed him that he could not excuse jurors 11 and 13 without providing a race-

neutral explanation for doing so. After the court denied the peremptory challenges to jurors 11 and 13, defense counsel continued to conduct voir dire with respect to newly seated jurors and counsel was offered the opportunity to exercise additional peremptory challenges, but declined to do so. Accordingly, we reject this claim of error.

*People v. Brooks*, No. 338267, 2019 WL 573049, at *3 (internal

citation omitted)(emphasis original).

The Equal Protection Clause of the Fourteenth Amendment prohibits

a prosecutor from challenging potential jurors solely on account of their

race. *Batson v. Kentucky,* 476 U.S. 79, 89 (1986).  A criminal defendant

may establish a *prima facie* case of purposeful discrimination in the

selection of a petit jury solely on evidence concerning the prosecutor's

exercise of peremptory challenges at the defendant's trial. *Id.* at 96.  To

establish such a case, a defendant must show that he is a member of a

cognizable racial group and that the prosecutor has used peremptory

challenges to remove members of the defendant's race from the jury

venire.  The defendant must also show that these facts and any other

relevant circumstances raise an inference that the prosecutor used the

peremptory challenges to exclude jurors from the petit jury on account of

their race.  These relevant circumstances include the pattern of strikes and

the prosecutor's questions and statements. *Batson,* 476 U.S. at 96-97.

- 8 -

Once the defendant makes a *prima facie* showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97.  The trial court must then determine whether the defendant carried his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98.

*Batson* has been extended to prohibit criminal defendants from engaging in purposeful discrimination on grounds of race in the exercise of peremptory challenges. *See Georgia v. McCollum,* 505 U.S. 42, 59 (1992). A prosecutor or judge's objection to the defendant's discriminatory use of peremptory challenges is sometimes referred to as a "reverse *Batson* motion" or "reverse *Batson* challenge." *Overton v. Newton*, 295 F.3d 270, 273 (2nd Cir. 2002).  The question for this Court is whether petitioner's reverse-*Batson* claim is cognizable on habeas review.

The United States Supreme Court has repeatedly held that peremptory challenges are not of a federal constitutional dimension. *See U.S. v. Martinez-Salazar,* 528 U.S. 304, 311 (2000)*; Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Gray v. Mississippi,* 481 U.S. 648, 663 (1987); *Stilson v. United States*, 250 U.S. 583, 586 (1919)("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges."); *Georgia v. McCollum,* 505 U.S. at 57 ("This

- 9 -

Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial").

The United States Supreme Court rejected a similar challenge brought by a criminal defendant, who claimed that he was prevented from exercising a peremptory challenge after the trial court judge accused his counsel of seeking to remove a juror because she was a woman. *See Rivera v. Illinois,* 556. U.S. 148, 153-55 (2009).  In rejecting the defendant's claim, the Supreme Court again noted that: "[B]ecause peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id.* at 158.  The Supreme Court ruled that the trial judge's refusal to excuse this juror did not deprive the defendant of his constitutional right to a fair trial before an impartial jury. *Id.*  The Supreme Court further noted that "the trial judge's conduct reflected a good-faith, if arguably, overzealous effort to enforce the antidiscrimination requirements of our *Batson*-related precedents. To hold that a one-time, good-faith misapplication of *Batson* violates due process would likely discourage trial courts and prosecutors from policing a criminal defendant's

discriminatory use of peremptory challenges.  The Fourteenth Amendment does not compel such a tradeoff." *Id.* at 160.

In the present case, petitioner has failed to show that the trial court judge's decision here was anything more than a good-faith effort to enforce the antidiscrimination requirements of *Batson*-related precedents.  Because this type of error does not violate due process, petitioner is not entitled to habeas relief on his first claim. *See Bell v. Jackson,* 379 F. App'x 440, 445 (6th Cir. 2010).

### B. Claims # 2 and # 6.  The ineffective assistance of counsel claims.

Petitioner argues in his second claim that he was denied the effective assistance of trial counsel.  In his sixth claim, petitioner argues he was denied the effective assistance of appellate counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance

prejudiced the defense. *Strickland,* 466 U.S. at 687.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

### 1.  Claim # 2.  The ineffective assistance of trial counsel claim.

### a.  Counsel was not ineffective during jury selection.

Petitioner first alleges that trial counsel was ineffective because she relied exclusively on petitioner to select a jury, that counsel was ineffective in responding to the judge's inquiry during jury selection, or that his attorney's responses to the *Batson* issue prevented petitioner from having the ability to exercise any of his remaining peremptory challenges.

The Michigan Court of Appeals rejected petitioner's claim at length:

The record does not support defendant's contentions that defense counsel was ineffective by relying exclusively on defendant to choose a jury, that counsel performed deficiently by responding to the court's inquiry during jury selection, or that counsel's responses to the *Batson* issue prevented defendant from being able to exercise any of his remaining peremptory challenges. On the contrary, the record shows that defense counsel was actively involved in jury voir dire and consulted with defendant regarding which jurors to peremptorily dismiss. Counsel responded to the trial court's inquiry by explaining that she was trying to *avoid* a *Batson* challenge. Although defendant contends he did not understand the meaning of "race neutral," the court's comments during trial fully informed defendant that he could not peremptorily dismiss a juror because the juror is white; rather, defendant needed to provide a race-neutral reason for dismissing a juror. Defendant did not express any confusion about the meaning of "race neutral" and he denied

- 12 -

wanting to dismiss jurors 11 and 13 because they were white. However, he was unable to provide any reason for wanting to dismiss the jurors, other than explaining that it was because of something they said, even though he could not recall what they said. Further, the trial court did not prevent defendant from exercising additional peremptory challenges. It only informed him that he could not peremptorily dismiss jurors without a race-neutral reason. Thereafter, defense counsel continued to participate in the voir dire of replacement jurors and defendant was offered the opportunity to exercise additional peremptory challenges, but passed on doing so. There is nothing in the record to support defendant's factual allegation that the trial court precluded him from exercising peremptory challenges. Thus, defendant has failed to establish the factual predicate for his claim.

To the extent that defendant may be suggesting that his jury was not impartial, he has not provided any factual support for this conclusion. He also has not identified any reason that a seated juror should have been dismissed peremptorily, and he does not allege any prejudice as a result of defense counsel's conduct of voir dire. Defendant has failed to carry his burden to prove that counsel's performance during jury selection was deficient and that he suffered prejudice therefrom.

*People v. Brooks*, 2019 WL 573049, at *4 (emphasis original)(internal citation omitted).

One of the most essential responsibilities of a defense attorney is "to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to ferret out jurors who are biased against the defense." *Miller v. Francis,* 269 F.3d 609, 615 (6th Cir. 2001). However, a defense counsel's actions during *voir dire* are presumed to be matters of trial strategy and

cannot serve as the basis of an ineffective assistance of counsel claim unless "counsel's decision is shown to be so ill-chosen that it permeates the entire trial with unfairness." *Id.* at 615-16.

Petitioner is not entitled to relief on his claim because he failed to show that counsel performed deficiently during jury selection.  Defense counsel was actively engaged during the jury selection process and involved in jury *voir dire* and consulted with petitioner concerning which jurors to peremptorily dismiss.  Petitioner's counsel responded to the trial judge's inquiry about what she and petitioner were arguing about by informing the judge that she was trying to avoid a *Batson* challenge by the prosecutor.  Petitioner was not prevented from exercising any further peremptory challenges by the judge, he was only told that he could not remove potential jurors from the jury because they were white, but had to have a race-neutral reason for doing so.

Secondly, petitioner has failed to show that he was prejudiced by counsel's conduct during jury selection, because there is no allegation that any biased jurors were seated in this case.  To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F.3d

- 14 -

453, 458 (6th Cir. 2001); s*ee also Miller v. Francis,* 269 F.3d at 616 (when

a claim of ineffective assistance of counsel is founded on a claim that

counsel failed to strike a biased juror, the defendant must show that the

juror was actually biased against him).  Petitioner failed to make this

showing; he is not entitled to relief on this claim.

### b.   Counsel was not ineffective for failing to move for separate juries.

Petitioner next claims that counsel was ineffective for failing to move

for petitioner and his co-defendant to be tried by separate juries.

The Michigan Court of Appeals rejected the claim as follows:

> Defendant and codefendant Fleming did not present mutually exclusive or irreconcilable defenses at trial, and there is no indication that the jury was exposed to evidence that was admissible against one defendant, but not admissible against the other. Although defendant asserts that he was prejudiced because the prosecution introduced evidence that he and Fleming knew each other, defendant does not explain why such evidence would not have been admissible before a separate jury. In sum, defendant has not demonstrated that a separate jury was necessary to protect his right to a fair trial. Accordingly, any motion for a separate trial or jury would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."

*People v. Brooks*, 2019 WL 573049, at *5 (internal citations omitted).

"[U]nder Michigan law, severance is required only when a defendant

shows that it is necessary to avoid prejudice to his substantial rights." *Clark*

*v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(citing M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W.2d 490 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524 N.W.2d 682 (1994)). Finally, under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in MCR 6.120(B). MCR 6.120(B) defines related offenses that are those "based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan."

The preference under Michigan law for joint trials, combined with the fact that no reasonable argument could be made that petitioner and his co-defendant had irreconcilable defenses or that evidence that petitioner knew his co-defendant would have been inadmissible at a separate trial suggests that any motion to sever that might have been made by petitioner's lawyer would have met with failure. *See e.g. Van v. Jones,* 475 F.3d 292,314 (6th Cir. 2007). Petitioner is therefore unable to show any prejudice from

counsel's failure to move for severance, because it is clear from the

Michigan Court of Appeals' decision that the motion would have most

certainly been denied. *See McQueen v. Scroggy,* 99 F.3d 1302, 1316 (6th

Cir. 1996).

### c. Counsel was not ineffective for failing to request an adjournment.

Petitioner next contends that trial counsel was ineffective for failing to

request an adjournment after the judge reinstated an armed robbery charge

which had been dismissed at the preliminary examination.

The Michigan Court of Appeals rejected this claim as follows:

Defendant next argues that defense counsel was ineffective by failing to request an adjournment after the trial court granted the prosecution's motion to reinstate an armed robbery charge that had been dismissed at the preliminary examination. Although defendant argues that defense counsel should have requested an adjournment in order to be able to defend the added charge, there is no indication in the record that counsel was unprepared to defend against the allegation. Indeed, counsel testified at a *Ginther*[2] hearing that she had no reason to request an adjournment when the charge was reinstated because "it would not have made a difference" in her strategy. As there is no basis for concluding that defense counsel was unprepared to defend against the added robbery charge, and defense counsel conceded that the added charge did not affect her trial strategy, defendant has failed to bear his burden of proving his claim of ineffective assistance of counsel for failing to seek an adjournment.

---

[2] *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973)(Footnote original).

- 17 -

*People v. Brooks*, 2019 WL 573049, at *5.

Petitioner was not prejudiced by his trial counsel's failure to request a continuance after the armed robbery charge was reinstated absent any showing that trial counsel was unprepared or how additional preparation time would have aided petitioner's case. *See Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, *5 (6th Cir. Nov. 30, 2016).  Petitioner is not entitled to relief on this claim.

### d.   Counsel was not ineffective by allowing him to testify.

Petitioner next contends that trial counsel was ineffective for permitting him to testify without preparing him to testify or to be able to handle the prosecution's cross-examination.

The Michigan Court of Appeals rejected this claim as follows:

> Defendant argues that defense counsel also was ineffective for allowing him to testify without adequate preparation and guidance, and without adequately preparing him for cross-examination. The record does not support his contention. Defense counsel testified at the *Ginther* hearing that she advised defendant not to testify because his demeanor and his attitude would not make him a good witness. Before testifying at trial, defendant advised the court that he and defense counsel had discussed the matter and he was satisfied with defense counsel's advice regarding whether to testify. Defendant also does not explain how any different preparation would have altered his trial testimony. In sum, defendant fails to establish the factual predicate for his claim that defense counsel did not adequately prepare him for his trial testimony.

*People v. Brooks*, 2019 WL 573049, at *5 (internal citations omitted).

This Court notes that a "defense counsel has an obligation to discuss potential strategies with his client and a criminal defendant is often called upon to consult with his attorney and decide whether to present a defense and whether to testify himself." *Harrison v. Motley*, 478 F.3d 750, 756 (6th Cir. 2007)(citing *Florida v. Nixon,* 543 U.S. 175, 178 (2004)). Counsel did discuss with petitioner whether he should testify. Counsel indicated at the *Ginther* hearing that she advised petitioner against testifying because she thought he would make a bad witness. Before testifying at trial, petitioner informed the judge that he and his attorney had discussed whether he should testify and he was satisfied with her advice. Defense counsel's decision to allow petitioner to testify after counsel discussed the pros and cons of testifying could be considered sound trial strategy that defeats petitioner's ineffective assistance of counsel claim. *See Carter v. United States*, 160 F. Supp. 2d 805, 812 (E.D. Mich. 2001). In addition, petitioner offers no argument on how additional preparation time would have improved his testimony or changed the outcome of the trial. Petitioner is not entitled to relief on this claim.

      **e.**    **Counsel was not ineffective for failing to object to the prosecutor's closing argument.**

Petitioner next claims that defense counsel was ineffective for failing to object to the prosecutor's closing argument that the defense was "victim blaming" when responding to defense counsel's remarks in her closing argument that the male manager's decision to have the female delivery person approach the house with the pizza was an example of chivalry being "dead." (ECF No. 7-16, PageID.PageID.45).

The Michigan Court of Appeals rejected this claim as follows:

> The prosecutor's comment during rebuttal argument was clearly made in response to defense counsel's closing argument. When reviewed in context and in conjunction with defense counsel's closing argument, the prosecutor's comment did not rise to the level of prosecutorial misconduct. Thus, defense counsel was not ineffective by failing to make a futile objection.

*People v. Brooks*, 2019 WL 573049, at *5.

Petitioner cannot show that counsel was ineffective for failing to object to the prosecutor's closing argument, in light of the fact that the Michigan Court of Appeals found on direct appeal that the prosecutor's remarks were not improper. *See Finkes v. Timmerman-Cooper,* 159 F. App'x 604, 611 (6th Cir. 2005)*.*

### f.   Counsel was not ineffective for failing to introduce telephone records.

Petitioner lastly contends that counsel was ineffective for failing to introduce telephone records to show that the telephone used to order the pizza did not belong to petitioner.  The Michigan Court of Appeals rejected the claim as follows:

> Lastly, defendant contends that defense counsel was ineffective for failing to introduce telephone records to show that the telephone used to order the pizza did not belong to defendant. He fails to explain how the telephone records would have been exculpatory. The prosecution did not claim that defendant owned the telephone, but introduced evidence that he had previously made calls from a telephone with the same number that was used to place the pizza order. Defense counsel testified at the *Ginther* hearing that she did not introduce telephone records because the mother of defendant's child testified that defendant had called her from that number on at least two occasions. As such, defendant has failed to show that defense counsel's decision not to introduce the records was objectively unreasonable, or that the result of the proceeding would probably have been different had the phone records been introduced.

*People v. Brooks*, 2019 WL 573049, at *6 (internal citation omitted).

Petitioner is unable to show that he was prejudiced by counsel's failure to introduce telephone records to show that petitioner did not own the telephone used to order the pizza, because this evidence would not have exculpated petitioner in light of other evidence showing that he had used the telephone in the past. *See e.g. Daniel v. Palmer*, 719 F. Supp. 2d

817, 829 (E.D. Mich. 2010), *rev'd on other grds sub nom. Daniel v. Curtin*, 499 F. App'x 400 (6th Cir. 2012).  Petitioner is not entitled to relief on this claim.

### 2.  Claim # 6. The ineffective assistance of appellate counsel claim.

Petitioner claims that appellate counsel was ineffective for failing to present on his direct appeal what now make up his third through fifth claims.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005).  Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016)(per curiam).

As the Court will discuss, *infra,* none of petitioner's remaining claims have any merit.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner is not entitled to relief on his sixth claim.

### C. Claim # 3.  The reinstatement of the armed robbery claim.

Petitioner next claims that the trial court erred in reinstating an armed robbery charge which had been dismissed by the examining magistrate at the preliminary examination.  The prosecutor moved in the circuit court for reinstatement of the armed robbery charge, contending that sufficient evidence had been presented at the preliminary examination to justify binding petitioner over for trial on this charge.  The circuit court judge agreed and reinstated the charge.

A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).  There is no federal constitutional right to a preliminary examination. *United States v. Mulligan*, 520 F.2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).  Petitioner's claim that there was insufficient evidence presented at his preliminary examination to bind him over for trial on the armed robbery charge raises only a matter of state law and

procedure that cannot form a basis for federal habeas relief. *See Tegeler v. Renico,* 253 F. App'x 521, 525-26 (6th Cir. 2007).  Petitioner's claim that the judge erred in reinstating the armed robbery charge after finding that sufficient evidence had been presented at the preliminary examination to support this charge is thus non-cognizable on habeas review. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 863 (E.D. Mich. 2009).  Petitioner is not entitled to relief on his third claim.

### D. Claim # 4.  The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict him of armed robbery, therefore, the judge erred in denying his motion for a directed verdict on this charge.[3]

The Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question in reviewing the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt

---

[3] Petitioner's claim involving the trial court's failure to direct a verdict of acquittal is construed as an attack on the sufficiency of the evidence. *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002).

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

A court need not "ask itself whether *it* believes that the evidence at the trial

established guilt beyond a reasonable doubt."  Instead, the relevant

question is whether, after the evidence is viewed in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal

citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that

rejects a sufficiency of the evidence claim merely because the federal court

disagrees with the state court's resolution of that claim.  Instead, a federal

court may grant habeas relief only if the state court decision was an

objectively unreasonable application of the *Jackson* standard. *See*

*Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can

sometimes disagree, the inevitable consequence of this settled law is that

judges will sometimes encounter convictions that they believe to be

mistaken, but that they must nonetheless uphold." *Id.*  For a federal habeas

court reviewing a state court conviction, "the only question under *Jackson*

is whether that finding was so insupportable as to fall below the threshold

of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state

court's determination that the evidence does not fall below that threshold is

entitled to "considerable deference under [the] AEDPA." *Id.*

Mich. Comp. Laws § 750.529 defines armed robbery as:

(1) A person who engages in conduct proscribed under section 530 [the unarmed robbery statute] and who in the course of engaging in that conduct, does any of the following is guilty of armed robbery:

(a) possesses a dangerous weapon.

(b) possesses an article used or fashioned in a manner that would cause a reasonable person to believe the article is a dangerous weapon.

(c) Represents orally or otherwise that he or she possess a dangerous weapon.

(2) A person who violates this section is guilty of a felony punishable by imprisonment for life or for any term of years.

(3) If a violation of this section results in an aggravated assault of or serious injury to any other person, the person must be sentenced to a minimum term of imprisonment of not less than 2 years.

Under Michigan law, the elements of armed robbery are "(1) an

assault, (2) a felonious taking of property from the victim's person or

presence, and (3) the defendant must be armed with a weapon described

in the statute." *Banks v. Rivard*, 760 F. Supp. 2d 724, 729 (E.D. Mich.

2010)(quoting *People v. Johnson*, 206 Mich. App. 122, 123, 520 N.W.2d

672, 673 (1994)).  The requisite intent for the crime of armed robbery may

be inferred by a jury from circumstantial evidence. *See People v. Sharp*, 57 Mich. App. 624, 626, 226 N.W.2d 590 (1975).

The evidence satisfied all elements beyond a reasonable doubt.

First, petitioner assaulted the delivery driver, Katrina Weatherbee, by pointing a gun at her.  Ms. Weatherbee arrived at the house to deliver the pizza and called the number 313-605-6964 to indicate she was there. (ECF No. 7-13, PageID.539-40).  A man whom she identified as co-defendant Fleming exited the house. (*Id.*, PageID.542).  As Ms. Weatherbee approached the house to deliver the pizza to Mr. Fleming, a different man, whom she identified as petitioner, emerged from the side of the house armed with a gun with a mounted laser.  Petitioner pointed the gun directly at Ms. Weatherbee's chest. (*Id.,* PageID.546-47).  Ms. Weatherbee's manager, armed with a firearm, ordered petitioner to drop the gun while pointing his own weapon at Brooks. (*Id.*, PageID.548-49).  Petitioner assaulted Ms. Weatherbee by pointing a gun at her.

Second, petitioner attempted to feloniously take property from Ms. Weatherbee.  Although petitioner did not actually steal any money or other items from Ms. Weatherbee, a rational jury could infer from the evidence that this was his intent.  Petitioner waited until his co-defendant distracted Ms. Weatherbee.  He then pointed his gun at her, but did not shoot.  Before

petitioner could take any money, he was stopped by Ms. Weatherbee's manager.  Under Michigan law, the attempted robbery was sufficient to complete the crime of armed robbery. *See People v. Williams*, 491 Mich. 164, 182–83, 814 N.W.2d 270, 280 (2012).

Finally, petitioner was armed with a dangerous weapon—a gun. *See, e.g., People v. Norris*, 236 Mich. App. 411, 414, 600 N.W.2d 658, 660 (1999).  Thus, the third element was satisfied as well.

The evidence at trial was sufficient for a rational trier of fact to conclude that petitioner committed an armed robbery.  The Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was reasonable, precluding habeas relief.

**E. Claim # 5. The perjury claim.**

Petitioner lastly claims that the prosecutor committed misconduct by suborning perjury from Ms. Weatherbee that she called the pizza buyer on her telephone upon her arrival at the house to confirm delivery.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269

- 28 -

(1959)(internal citations omitted).  To prevail on a claim that a conviction

was obtained by evidence that the government knew or should have known

to be false, a defendant must show that the statements were actually false,

that the statements were material, and that the prosecutor knew they were

false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  However, a habeas

petitioner must show that a witness' statement was "indisputably false,"

rather than misleading, to establish a claim of prosecutorial misconduct or a

denial of due process based on the knowing use of false or perjured

testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Petitioner has presented no evidence to this Court to establish that

Ms. Weatherbee testified falsely about calling the pizza buyer when she

arrived at the house.  Conclusory allegations of perjury in a habeas corpus

petition must be corroborated by some factual evidence. *Barnett v. United

States*, 439 F.2d 801, 802 (6th Cir. 1971).  The phone records do not

support Brooks' claim because they do not cover the relevant time period.

The pizza order was placed around 8:00 p.m. on December 9, 2015. (ECF

No. 7-14, PageID.629). The phone records span from 18:08 to 21:50,

which would be 6:08 p.m. to 9:50 p.m., but those times are in Coordinated

Universal Time (UTC), not Eastern Standard Time (EST). (ECF No. 1,

PageID.55).  While the record indicates that "AT&T has queried for records

using Eastern Time Zone," it also indicates that "AT&T's records are stored and provided in UTC." (*Id*.).  Converting the times from UTC to EST reveals the time period in the phone records to cover 1:08 p.m. to 4:50 p.m.  The pizza order was placed around 8:00 p.m. Thus, the phone records are devoid of any evidence in support of petitioner's perjury claim.

Secondly, petitioner has not proven that Ms. Weatherbee's testimony was false. Petitioner does not allege that the manager's testimony corroborating that Weatherbee made the phone call was false.  Yet, the manager confirmed that Ms. Weatherbee made the call, defeating petitioner's claim. (ECF No. 7-14, PageID.658).

Finally, assuming that Ms. Weatherbee may have testified falsely about making a phone call to the pizza buyer, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Ms. Weatherbee had testified falsely. *See Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009).  Petitioner is not entitled to habeas relief on his fifth claim.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

IT IS FURTHER ORDERED that a certificate of appealability is

**DENIED**.

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to

appeal *in forma pauperis.*

Dated:  March 15, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 15, 2022, by electronic and/or ordinary mail and also
on  Charles R. Brooks #238284, Lakeland Correctional
Facility, 141 First Street, Coldwater, MI 49036.

s/Brianna Sauve
Deputy Clerk

---